```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3   Criminal Action No. 20-cr-305-DDD-3

 4    UNITED STATES OF AMERICA,

 5          Plaintiff,

 6          vs.

 7    JONATHAN K. YIOULOS,

 8          Defendant.

 9   ----------------------------------------------------------------

10                     REPORTER'S TRANSCRIPT

11                      Sentencing Hearing

12   ----------------------------------------------------------------

13          Proceedings before the HONORABLE DANIEL D. DOMENICO,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 3rd day of December, 2024, in
     Courtroom A1002, United States Courthouse, Denver, Colorado.
15

16                        APPEARANCES
     For the Plaintiff:
17   BRYAN FIELDS and SARAH H. WEISS, United States Attorney's
     Office, 1801 California Street, Suite 1600, Denver, CO 80202
18

19
     For the Defendant:
20   RICHARD K. KORNFELD, Recht & Kornfeld PC, 1600 Stout Street,
     Suite 1400, Denver, CO 80202
21

22

23

24
     Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
25   A259, Denver, CO 80294, (303)335-2358
```

Proceedings reported by mechanical stenography; transcription produced via computer.

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1                    P R O C E E D I N G S

2        (Proceedings commenced at 10:34 a.m.)

3            THE COURT:  We are here for a sentencing hearing in

4    case number 20-cr-305-3, United States versus Jonathan K.

5    Yioulos.  Why don't I have counsel enter their appearances for

6    the record, for the Government?

7            MR. FIELDS:  Good morning, Your Honor.  Bryan Fields

8    for the United States.  And I'm joined by my co-counsel, Sarah

9    Weiss, and Special Agent Lisa Palmer with the IRS.

10            THE COURT:  Good morning.  Thank you for being here.

11            MR. KORNFELD:  Good morning, Your Honor.  Rick

12    Kornfeld on behalf of Mr. Yioulos, who is here on bond.

13            THE COURT:  Thank you.  And from probation?

14            MS. COLEMAN:  Good morning, Your Honor.  Mallory

15    Coleman on behalf of probation.

16            THE COURT:  Good morning.  Thank you also for being

17    here.  So, the defendant previously pleaded guilty pursuant to a

18    plea agreement to one count of conspiracy to commit wire fraud

19    and one count of wire fraud.  We're here today for sentencing.

20    I've received and reviewed a number of documents in preparation

21    for this hearing, including the second revised presentence

22    report and its addendum, which are documents 602 and 603, and

23    the attachments to any of those; the Government's motion for a

24    downward departure, which is docket number 580; the Government's

25    motion to dismiss counts, which is document 595; and the

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1  Government's motion for a decrease for acceptance of

2  responsibility, which is number 596; the defendant's motion for

3  a non-guideline sentence, and is there anything else that I

4  didn't identify that I should have reviewed, Mr. Fields?

5          MR. FIELDS:  The preliminary order of forfeiture, Your

6  Honor.

7          THE COURT:  Right.  So, I entered that order as well.

8  Thank you.  Mr. Kornfeld, anything else?

9          MR. KORNFELD:  No, Your Honor.  I think you have

10 accounted for everything.

11         THE COURT:  Thank you.  So, Mr. Kornfeld, have you and

12 your client had enough time to review those documents and

13 discuss this process?

14         MR. KORNFELD:  We have, Your Honor.

15         THE COURT:  Do you have any concerns about his ability

16 to understand those documents or what we're doing here today?

17         MR. KORNFELD:  I do not, Your Honor.

18         THE COURT:  Thank you.  Mr. Yioulos, have you had

19 enough time to review and discuss these documents and ask

20 Mr. Kornfeld any questions you had about all of this?

21         THE DEFENDANT:  Yeah.  I have, Your Honor.

22         THE COURT:  And do you believe you understand those

23 documents and what we're doing here today?

24         THE DEFENDANT:  I do.

25         THE COURT:  All right.  Thank you.  So, there are no

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    objections filed to the presentence investigation report.  Is

2    there any objections or issues with the technical aspects of the

3    report that we need to discuss at this time?  Mr. Fields,

4    anything?

5              MR. FIELDS:  No, Your Honor.

6              THE COURT:  Mr. Kornfeld?

7              MR. KORNFELD:  No, Your Honor.

8              THE COURT:  All right.  So, then I will adopt the

9    factual findings and guideline calculations of the report.  I

10   will also grant the Government's motion for an offense level

11   reduction.  As to the motion for a downward departure, under

12   5K1.1, obviously I understand what happened in this case.  If

13   there's -- the parties think we need to discuss that particular

14   motion further, we can, but otherwise, I'm inclined to grant it.

15   Mr. Fields, do you have anything to add?

16             MR. FIELDS:  No, Your Honor.  We would stand on our

17   pleading.

18             THE COURT:  Mr. Kornfeld, anything?

19             MR. KORNFELD:  No, Your Honor.  Thank you.

20             THE COURT:  So, that motion is also granted.  That

21   results in a 50 percent downward departure from the guideline

22   level.  The defendant has additionally moved for a below

23   guideline sentence of probation.  The Government has recommended

24   a sentence of 13 months of imprisonment, which is about

25   50 percent below the bottom of the guidelines as calculated

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    after that departure.

2         I want to of course hear from everyone.  I will

3    probably begin with the Government, and then Mr. Kornfeld, and

4    then if the defendant wishes to make a statement before I make a

5    final decision, he will have that opportunity.  I will say that

6    I do think that I understand Mr. Yioulos' role, both in the

7    underlying crime and in the prosecution of this case, and agree

8    that something significantly below the guidelines is warranted

9    in this case, probably in my view even less, a shorter sentence

10   than the Government has recommended, but I do think I probably

11   agree that at least some term of imprisonment is necessary in

12   this case to satisfy all of the guideline factors, but perhaps

13   four to six months would be sufficient in my view.

14        But that's obviously my initial take based on my

15   understanding, but I do want to hear from everyone.  So,

16   Mr. Fields, if you would like to explain the Government's

17   position, please do.

18        MR. FIELDS:  Thank you, Your Honor.  I will be very

19   brief, because our position is set forth in the 5K motion.  So,

20   on top of the 5K motion, I will just put on the record the

21   Government does not oppose some variance in this case,

22   consistent with the variance that the Court has previously

23   granted with the codefendants.  We understand, acknowledge, and

24   respect the Court's views regarding the sentencing guidelines,

25   and we feel like the reasoning from those cases should also

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    apply here.  So, other than that, other than not opposing a

2    variance to that level as set forth in our 5K motion, we would

3    stand on our pleading, Your Honor.

4        THE COURT:  Thank you, Mr. Fields.  I appreciate that.

5    Mr. Kornfeld?

6        MR. KORNFELD:  Thank you, Your Honor.  Your Honor, I

7    understand that the Court certainly knows this case probably

8    better than most, and knows this defendant better than most,

9    having seen Mr. Yioulos was there over three days for about 16

10   hours.  And I think the Court also in that time got a sense

11   of -- a bit of a sense of him just as a person, and certainly

12   his role in this offense.  And I appreciate also the Court's

13   initial take and articulating the initial take.  And certainly I

14   am asking for a bit more than the Court indicated you might

15   think is appropriate.

16       And in normal circumstances, I think that would be in

17   this building maybe even an extraordinary ask, but in this case,

18   from my perspective, it's a big ask, but it's a warranted ask,

19   because I think Mr. Yioulos is an extraordinary person and an

20   exceptional defendant.  The Court is aware of his background.

21   He grew up in a supportive home.  He's a well-educated person.

22   I think some of his family members are on the phone now, and I

23   appreciate the Court's courtesies in allowing that to happen,

24   because they live in the northeast.

25       And over the course -- I think one of the things that's

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   been so different about this case is not just the four years

2   that have elapsed since Special Agent Palmer and her colleague

3   confronted Mr. Yioulos, but also kind of all the steps he's

4   taken, both within the context of the legal system and also in

5   his own personal life.

6        The Court is aware of course that, you know, it's

7   difficult living with sort of the anvil of uncertainty hanging

8   over your head.  And while that is obviously brought on by

9   Mr. Yioulos' own actions in becoming a criminal defendant, the

10  stress of that situation is real for every defendant.  I think

11  it's particularly real for Mr. Yioulos and for his partner

12  Kristina Lighten.  To their great credit, they have moved on on

13  some level with their life.  Ms. Lighten is a dental student.

14  Thankfully, she's in dental school in Buffalo, which meant they

15  didn't have to move.

16        She's a -- she's completing her first year.  And as

17  articulated, I think in the letter, that is a significant

18  responsibility.  And Mr. Yioulos in turn has taken on

19  significant responsibilities.  Over the course of the four

20  years, he's done pretty much every kind of job one could think

21  of to support himself and his family, and then he's taken on the

22  more significant family roles, not only as primary caregiver to

23  their children -- and as noted in my moving papers, while the

24  kids who are now, I believe seven and 12, are not his biological

25  kids, they are his children, and he considers them his children.

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    They consider him to be a father.

2         And he stepped up in every way imaginable: coaching,

3    homework, bedtime, cooking.  All these things, which, you know,

4    one hopes that any parent in that situation would do, but

5    unfortunately, all of us in this room know that not everybody

6    does it, and certainly not everybody embraces that role.  And

7    then he went even a step farther helping Ms. Lighten's late

8    grandmother, who is terminally ill and who unfortunately

9    recently passed away, and also helping an uncle of hers who was

10   also very ill.

11        And, you know, I think it just speaks to his character.

12   I think it speaks to his values.  I think it speaks to his

13   giving nature.  And I'm acutely aware, you know, that there's

14   this balance, that these things don't undo the criminal conduct,

15   but I think, you know, one hopes in life to grow as a human

16   being.  When this case started, he was a 28-year-old young man,

17   and he's now matured into an adult and a giving member of his

18   family, of his community, and just as someone who really tries

19   to -- you know, tries to move forward in life in a positive

20   manner.

21        To that end, since I think I wrote my motion, he has

22   been offered a job in Buffalo as a controller for a company

23   called Bundle.  They're aware of his legal situation, and

24   depending on how the waves break, he's supposed to start next

25   week.  And this is a full-time, 85,000-dollar-a-year starting

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   salary.  And if he's allowed to do that, he's still going to be

2   the primary caregiver, because dental school is a full-time gig

3   and doesn't have the summer vacations and things like that that

4   undergraduate studies do.

5   　　　　He -- you know, his support for Kristina and her

6   studies, I think, also speak to just the type of partner he

7   wants to be and the kind of partner he is.  And the bottom line,

8   he's a critical and irreplaceable member of this family.  And

9   it's difficult in my position to stand up here and say, well --

10  to a Court, well, look, on the one hand, one of the key reasons

11  for my asking for probation is to allow kind of this continuity

12  of family dynamic to allow his partner, you know, to continue

13  her studies without those attendant complications.

14  　　　　And I understand, you know, the retort to that is

15  typically, well, he should have thought about that, you know,

16  when he was 28 years old and engaged in these crimes.  And that

17  on one level is a fair retort, but then I would ask the Court to

18  pivot to the next part of who I think Mr. Yioulos has proven

19  himself to be in this case, and that is as an extraordinary

20  cooperator.  I mean, as the Government said in their pleading,

21  above and beyond the call of duty.

22  　　　　Like my colleagues for the Government, I've been doing

23  this for a long time.  I've done it on both sides of the aisle.

24  I've dealt with lots of cooperators.  I have not personally

25  represented a cooperator or seen a cooperator not just go

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1  through the motions, not just, quote/unquote, do what they have

2  to do, because we see that in this building all the time, but

3  really embrace that role almost as an act -- an active act of

4  atonement.

5       I think that really was reflected by Mr. Yioulos'

6  candor, by his credibility, by his unflinching acceptance of his

7  own role and his own criminality, by his demeanor in court, by

8  his unflappability, by his availability to the Government, and

9  to the great appreciation -- my great appreciation and to the

10 great credibility of the Government, you know, they articulate

11 it better than I can from their perspective the nature, the

12 depth, the scope of that cooperation.  And clearly he was the

13 star witness, and clearly, you know, I think that he was a key

14 part to the Government seeking justice in this case.

15       The other thing that is a bit unusual on the

16 cooperation angle from my perspective is this -- Mr. Yioulos

17 made this decision literally from the moment he was confronted.

18 He didn't consult with prior counsel, who is now retired.  He

19 certainly didn't consult with me.  I came into this after he

20 pled guilty.  He didn't think about it.  He didn't talk to his

21 family.  He knew that what he had done was wrong, and that --

22 those acts of contrition, those acts of atonement began

23 literally day one on July 7th, 2020.  No equivocation.  No sort

24 of hesitation.  As I often tell clients, you know, you're either

25 in the lake or you're on the dock, and he jumped right into the

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    middle of the lake in terms of his cooperation.

2            And I think, Your Honor, that that's an important and

3    appropriate segue into his remorse and into his acceptance of

4    responsibility.  Every single defense lawyer stands up in front

5    of you and every other judge in this building and says, my

6    client is remorseful.  My client accepts responsibility.  That

7    is all true in this case, but the nice thing for me in this case

8    is it isn't me telling you that.  You got to see it, you know,

9    with your own eyes.  And the old actions speak louder than

10   words, never has that been more true in this context than in the

11   case of Mr. Yioulos.

12           He is -- was and is ashamed of his conduct.  This led

13   to some incredibly difficult not only soul-searching, but tough

14   conversations with his partner, with his parents, with others

15   that support him.  And he's had to confront a lot of his own

16   failings over the last four years in dealing with the attendant

17   issues as a result of his conduct in this case.

18           His journey of self-reflection, his acceptance of his

19   own failings, his actions of atonement, I think are best

20   reflected in the letters from Kristina and from his family,

21   which the Court has reviewed.  And his deep contrition is

22   reflected by, again, his actions over the last four years, not

23   only in his cooperation in this case, but I think also in his

24   actions in supporting Kristina, her education and ambitions, and

25   his -- and his resilience in finding a decent job despite all

20-cr-305-DDD-3     Sentencing Hearing    12-03-2024

1   the troubles and issues attendant to this criminal conviction.

2          So, regardless of what happens, the nice thing is I

3   think everyone in this room knows Mr. Yioulos has tremendous

4   amount of things going for him, tremendous love and support,

5   tremendous drive and resilience to move forward in his life.

6   And I have no doubt that not only will he continue to contribute

7   to his family, but also to his community.  His actions, Your

8   Honor, not my words, reflect that he wants to be a responsible

9   adult community member as well as a loving and supportive

10  partner, father, and son.

11         He blames absolutely nobody other than himself.  The

12  Court heard all the facts.  It would be easy -- do I as his

13  lawyer think, you know, different defendants in this case took

14  advantage of Mr. Yioulos?  Absolutely I believe that.  Has he

15  ever said that to me?  No.  Has he ever used that as an excuse

16  in his testimony or in his description of his conduct to the

17  Government or to the probation department?  No.

18         He is someone who has the moral and the ethical heft

19  and weight to accept his own failings, and frankly, Your Honor,

20  to accept whatever punishment this Court deems is appropriate.

21  But with all that, Your Honor, I am asking the Court to consider

22  sentencing him to probation or to a -- as restrictive a home

23  detention paradigm as might be appropriate just so he's not

24  removed from the home for the reasons I've articulated.

25         If the Court comes to another decision, obviously he

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    and his family will deal with that, but again, I'm hoping that

2    just based on the totality of everything that's gone on and the

3    passage of time, that the Court doesn't think that this request

4    is inappropriate, because again, I think for the reasons I've

5    articulated, both today and hopefully in my moving papers, we

6    humbly suggest that it would satisfy in this case all of the

7    sentencing purposes as articulated in 18 USC 3553.  Thank you,

8    Your Honor.

9            THE COURT:  Thank you, Mr. Kornfeld.  Mr. Yioulos,

10   would you like to make any statement before I decide your

11   sentence?

12           THE DEFENDANT:  I would.

13           THE COURT:  Okay.  You can do it from there.  That's

14   fine.

15           THE DEFENDANT:  Okay.

16           THE COURT:  Let's move the microphone over to you.

17           THE DEFENDANT:  Your Honor, obviously a lot has

18   transpired over the past four and a half years.  You know, I

19   completely understand what I did, and to contribute to this case

20   was wrong.  And, you know, I let a lot of people down.  Not only

21   the Alfs, who were essentially the victims of this crime, but

22   also I let my parents down, Kristina down, friends down, other

23   family members down.  You know, my son -- funny to you, but

24   every day before, even when I was growing up, my mom would write

25   on a piece of paper all the chores I had to do when I got home

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    from school.  At the end of it she would write, be a good

2    citizen.

3              And you know what?  I tried my best.  And I always did,

4    whether it's helping somebody walking out of Home Depot, older

5    person trying to load their car, whether it's helping kids in

6    the community, which I do a lot of now -- you know, I coach

7    teams.  I volunteer at their school.  You know, I help with

8    lunches.  I help any way I can.  Whether I have to be a taxi one

9    day for the kids or I have to be a chef another day, I do

10   whatever I can to contribute.

11             And, you know, when I came into Ms. Lighten's life,

12   this was back in 2019, kind of in the middle of all of this,

13   before anything happened.  And, you know, we fell for each

14   other.  And I messed up, because I had this whole thing looming

15   over my head that I knew was wrong, but I entered her life and

16   essentially blew it up.  And we've had our fair share of ins and

17   outs since then because of what's going on, the uncertainty.

18             You know, she's in dental school now, which is amazing,

19   and I'm trying to support her and the family as much as I can.

20   And, you know, doing whatever I can to contribute, whether it's

21   work, help with the kids, help with her -- you know, I've helped

22   her brother when he was in college, do what I can, but overall,

23   it's just -- I'm trying to get back to doing the things that I

24   did even before any of this happened.

25             You know, helping her grandmother, helping her uncle,

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    those are things that I'm not doing to, you know, gain any

2    sympathy from her or the Court.  It's just that's who I am as a

3    person.  That's who I have always been.  You know, even when

4    this was transpiring, I was on a board for young audiences, an

5    organization, nonprofit in Western New York, and I have always

6    tried to volunteer.  Even before any of this, I just try to do

7    the best I can to help the community, and to truly be a good

8    citizen.

9        And, you know, through all of this, through all of this

10   uncertainty, Ms. Lighten and I have discussed having our own

11   kids someday, but with all the uncertainty over -- it's been

12   four and a half years now.  I've been trying to put this behind

13   me since essentially day one.  You know, I know that it's a

14   process, and I know it's my own wrongdoing that's led to a lot

15   of the complications in my life.  It's -- you know, getting a

16   job is difficult.  Keeping a job is difficult.  You know, doing

17   a lot of the things that are normal in society now with the

18   felon tag is difficult, and it's going to continue to be

19   difficult my entire life.

20       And I know the restitution is then going to have to do

21   that my entire life as well.  But overall, you know, we -- it's

22   tough for us, because do we have kids or not because of the

23   uncertainty?  So, we just ultimately decided not to, because we

24   never knew when this was going to end.  So, what can I do except

25   be the best stepfather to two girls that I have now?  You know,

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    I've seen them grow since they were, you know, two and seven

2    years old into seven and 12, and basically jumped right in with

3    them during COVID.

4         And I'm trying to be as great of a stepdad to them as

5    my stepdad has been to me.  And, you know, he has been a rock in

6    my life, and so supportive of me, and, you know, I can't thank

7    them enough.  And even when I haven't been the best to them and

8    going through all this, he stuck right by my side.  Same with my

9    mom.  Same with my dad.  It's just been, I've had a great

10   support system.  And Kristina and her family, her mother, her

11   aunt, you know, her uncle, they've been so supportive.  Her

12   brother, everybody.  And, you know, I don't want to let them

13   down anymore.

14        And for me, you know, I want to continue doing the

15   things I'm doing positively for that family.  And, you know,

16   doing -- going away for a little bit, if that's ultimately your

17   decision, then, you know, I respect it.  And because I know what

18   I did was wrong, but I would love to just continue to contribute

19   positively to them, to the community, you know, continue

20   coaching.  Coached my daughter's flag football team, you know,

21   volunteer to help whenever I can if they need a sub coach,

22   anything.  And, you know, I just want to make good decisions for

23   my family, Kristina, my mom, just people that I really do love

24   and care about.  So, thank you, Your Honor.

25        THE COURT:  Thank you, Mr. Yioulos.

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1          THE DEFENDANT:  Of course.

2          THE COURT:  I appreciate that.  Thank you.  So, having

3    reviewed the record in this case and heard everyone's statements

4    and explanations here today, I do think that while I agree with

5    virtually everything Mr. Kornfeld said and appreciate everything

6    that the defendant said, that some prison in this case is

7    necessary to satisfy the statutory sentencing factors.

8          I will therefore sentence the defendant to custody of

9    the Bureau of Prisons for a term of two months on each of the

10   counts of conviction, to run concurrently.  Upon release from

11   imprisonment, he will be placed on supervised release for a term

12   of three years on each count.  Again, to run concurrently.  The

13   defendant is ordered to make restitution as explained in the

14   presentence investigation report, and I do find that the

15   defendant does not have the ability to pay interest, so I will

16   waive the interest requirement.  I also find that he does not

17   have the ability to pay a fine, so I waive the fine.

18         He is required to pay a special assessment of $100 on

19   each count of conviction, for a total of $200.  That's due and

20   payable immediately.  I also will make final the preliminary

21   order of forfeiture, which I believe requires the defendant to

22   forfeit a money judgment in the amount of $100,000 to the United

23   States.

24         Mr. Kornfeld, I'm inclined to impose all of the

25   conditions of supervised release.  I do note that one of those I

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    think involves limitations on his ability to act as a

2    controller.  I think you mentioned that he may have that option.

3    I hope he does, despite this sentence.  I'm inclined -- that can

4    be -- it just requires approval of the probation officer.  So, I

5    mean, I think I'm inclined to continue to impose that.

6            Ms. Coleman, if you would explain sort of the process

7    for approving that sort of employment and what you would require

8    if he did have that opportunity if I keep that condition?

9            MS. COLEMAN:  Yeah.  Do you want me to do it on the

10   record, or after?

11           THE COURT:  On the record.  I'm curious.

12           MS. COLEMAN:  Okay.  I'm sorry.  I missed exactly what

13   the employment condition -- the standard?

14           THE COURT:  Yeah.  Because I think he said he's got an

15   opportunity to serve as a controller, if I'm not mistaken, and I

16   think essentially special condition two requires him to get

17   approval for that from you or from his whoever.

18           MS. COLEMAN:  Likely he will be supervised in New York

19   with your probation officer there.  And they will go through a

20   process with you of whether or not it will or will not be

21   acceptable to work in a position that way.  I don't know --

22   that's about all I can say.

23           THE COURT:  Okay.  I think like typically my

24   understanding would be they would require sort of speaking with

25   the employer and that sort of thing.

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1          MS. COLEMAN:  Yes.  Exactly.

2          THE COURT:  Mr. Yioulos?

3          THE DEFENDANT:  So, this occurred when -- I was a

4    consultant for ProNexus, and it was a finance -- I was a

5    controller interim for some jobs, and so essentially they had to

6    write a letter to the employer.  The employer just had to sign

7    it and say we understand that, you know, his crimes were -- it's

8    basically just any sort of financial role required just extra

9    disclosure to the -- and communication from probation.  So,

10   that's what I'm aware of, and I assume it would be similar.

11         MS. COLEMAN:  Yes.

12         THE COURT:  Okay.  So, I think that's workable despite

13   the condition.  So, Mr. Kornfeld, my inclination then is to go

14   ahead and require all of those conditions, unless you have

15   anything else you want to discuss about the supervised release

16   conditions?

17         MR. KORNFELD:  No.  I think that's fine.  And as long

18   as there's that opportunity for that communication, it sounds

19   like it hasn't been an impediment, and it sounds like ultimately

20   with those disclosures, it's up to the potential employer to

21   make that decision with that additional information.  So, the

22   reality is Mr. Yioulos would be disclosing that anyway.  So, I

23   don't have any heartburn about that, Your Honor, or any of the

24   other recommended conditions.

25         THE COURT:  Okay.  Then I will include all of those

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1  conditions.  That will include all of the mandatory statutory

2  conditions, the standard conditions that this Court adopted in

3  general order 2020-20, and then all of the special conditions,

4  which most of them are financial restrictions and limitations

5  that are intended to ensure the payment of the financial

6  obligations in this case.

7          And then the only other one is a requirement to

8  participate in a program of cognitive behavioral treatment.  I

9  think that will help the defendant understand and overcome some

10  of the bad decision-making that despite his generally apparently

11  being a good, thoughtful, community-oriented person, led him to

12  participate in a significant crime.  And so I think all of those

13  conditions are necessary and not a greater limitation on his

14  liberty than required to serve the purposes of sentencing.

15          Mr. Yioulos, I know this is a restriction on your

16  hopes, and not what Mr. Kornfeld asked.  I don't think that ask,

17  given the extraordinary circumstances of your participation in

18  this case, given the length of time that you've been essentially

19  cooperating and waiting for this case to be over with -- I do

20  think that should be considered as part of punishment you've

21  already suffered.  I do admire and appreciate and think you

22  deserve a significant reward for the cooperation which everyone

23  has recognized, including the Government, has been

24  extraordinary, and started the day that you were caught.

25          It struck me from before you testified and certainly

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    when you testified that it seemed like potentially more of a

2    relief to be caught than something that you -- that was a

3    negative.

4         On the other hand -- and so if all I were doing was

5    trying to figure out what you deserve or what the defendant

6    needs or deserves, then I think probation would be a very

7    tempting sentence, but I have to also consider other sentencing

8    factors that look beyond just this defendant.  And the fact of

9    the matter is, Mr. Yioulos was a central player and necessary

10   part of a scheme to steal millions of dollars.

11        He -- while I admire his immediately helping the

12   Government investigate the crime and continuing his cooperation

13   throughout the process, he didn't stop before then.  He didn't

14   take any affirmative steps to end it before then, when it could

15   have been ended at a much earlier stage.  I agree with

16   Mr. Kornfeld that he clearly was taken advantage of by

17   codefendants, but this was a serious crime involving a lot of

18   money over a long period of time, and respect for the law and

19   deterrence of others who might think that, well, I will just

20   participate in this, and then if I get caught, I can just not

21   suffer any serious imprisonment if I just stop when I get

22   caught -- those factors require me to impose something along

23   these lines.

24        I understand that that is a problem for not just the

25   defendant, but his family, and I regret that, but as

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   Mr. Kornfeld pointed out, there were ways to prevent that before

2   now.  So, that is the justification I think that this sentence

3   is sufficient but not greater than necessary to serve all of the

4   sentencing factors that I have to consider.

5          Mr. Yioulos, I do want to advise you that although you

6   waived your appellate rights under the circumstances outlined in

7   the plea agreement, to the extent you have not waived your right

8   to appeal, I advise you that you must file a notice of appeal

9   with the clerk of the court within 14 days after entry of

10  judgment, or the right to appeal will be lost.  If you can't

11  afford an attorney for an appeal, the Court will appoint one to

12  represent you.  And if you request, the clerk of the court must

13  immediately prepare and file a notice of appeal on your behalf.

14         The Government -- I don't think I granted the

15  Government's motion to dismiss counts against this defendant,

16  but that motion is granted.  Is there anything else -- well, and

17  my inclination is to allow the defendant to remain on bond as he

18  is under the same conditions until he is designated by the

19  Bureau of Prisons.  Unless there's anything to discuss on that,

20  Mr. Fields?

21         MR. FIELDS:  No, Your Honor.  Nothing further from the

22  Government.

23         THE COURT:  Mr. Kornfeld, anything else?

24         MR. KORNFELD:  The only -- and I appreciate the

25  Court's indulgence on the privilege of self-surrender.  The only

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    other thing is I don't know what this Court's practice is about

2    making recommendations to BOP in the "for what it's worth"

3    department, but if the Court does do that, I would ask for just

4    a request of broad recommendation of the closest appropriate BOP

5    facility to Buffalo, New York.  I'm just not frankly familiar

6    with the facilities in that part of the country.

7             THE COURT:  All right.  I think I'm willing to do that

8    as long as Mr. Yioulos understands that I can only make a

9    recommendation in that regard, and that BOP will take that into

10   consideration, but I can't order them to designate you anywhere.

11   Officer Coleman, is that sort of general description sufficient

12   for you to include in the judgment?

13            MS. COLEMAN:  Yes, Your Honor.  And I just have a

14   question about the volunteer surrender.  Would the Court like a

15   specific date on the judgment, or will it be the general within

16   15 days of designation from the BOP?

17            THE COURT:  Yeah.  So, Mr. Kornfeld, do you need some

18   time -- does your client need some time?  Would you rather

19   just -- BOP typically takes a couple of weeks, and then he's

20   designated, but I could give him a bit of time if he needs to

21   get his affairs in order.

22            MR. KORNFELD:  May I just talk to him briefly about

23   that?

24            THE COURT:  Of course.

25            MR. KORNFELD:  Your Honor, I think the standard within

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1  15 days designation, but I appreciate the Court giving us that

2  option.

3            MS. COLEMAN:  Sorry.  I heard you guys talking, and

4  you said it will be after the holidays for sure, and that's not

5  a guarantee.

6            MR. KORNFELD:  Okay.

7            MS. COLEMAN:  So, 15 days is a window.  It's a within

8  15 days.  So, he could get designated next week and be required

9  to report in seven days.  Does that make sense?

10           MR. KORNFELD:  It does.  And I appreciate that.  So,

11 Your Honor, I don't know -- in the alternative, or, you know, if

12 this -- if the better option is a date certain --

13           MS. COLEMAN:  Yeah.  If that's what you're asking for,

14 then I can put on the judgment like on or after January 2nd, or

15 that's an example.

16           MR. KORNFELD:  That would be great.  Thank you.

17           THE COURT:  Okay.  I'm happy to do that.  So, we will

18 do on or after January 2nd.  If there is nothing else, then the

19 Court will be in recess.  Thank you all.

20       (Proceedings concluded at 11:12 a.m.)

21

22

23

24

25

1                          REPORTER'S CERTIFICATE

2

3

4            I, KEVIN P. CARLIN, Official Court Reporter for the

5    United States District Court for the District of Colorado, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein at the time and place

9    aforementioned and that the foregoing pages constitute a full,

10   true, and correct transcript.

11           Dated this 3rd day of January, 2025.

12

13

14

15

16                                      _____
                                        Kevin P. Carlin, RMR, CRR
17                                      Official Court Reporter

18

19

20

21

22

23

24

25